420 A.2d 500

**ALLEGHENY LUDLUM INDUSTRIES, INC., Appellant at No. 402,**

v.

**CPM ENGINEERS, INC., and Schindall Associates, Inc., Appellees at No. 415.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1979.

Filed May 2, 1980.

1976 and that it was only three months later, on February 13, 1977, that appellant committed the present arson offense.

John J. McLean, Jr., Pittsburgh, for appellant.

James H. Joseph, Pittsburgh, for appellee.

Before HESTER, MONTGOMERY and LIPEZ, JJ.

MONTGOMERY, Judge:

Plaintiff Allegheny Ludlum Industries, Inc., (hereinafter referred to a "ALI"), entered into a contract with the Defendants, CPM Engineers, Inc. and Schindall Associates, Inc. (hereinafter referred to as "CPM–Schindall"), whereby CPM–Schindall was to provide a program to ALI which was designed to reduce maintenance costs in ALI's steel making operations at its Brackenridge, Pennsylvania works. As a result of various problems between the parties concerning that contract, ALI instituted an action in assumpsit for $240,000 in the Court of Common Pleas in Allegheny County. CPM–Schindall entered a counterclaim for the amount of $47,360. In May, 1978, a jury returned a verdict of $180,000 plus accrued interest, for the Plaintiff, ALI and also for the Plaintiff on Defendant's counterclaim. Thereafter, CPM–Schindall moved for judgment n. o. v. and for a new trial. A three–judge panel granted CPM–Schindall's motion for a new trial limited to Plaintiff's claims but denied their motion for judgment n. o. v. In its Opinion, the lower court panel explained that it was granting a new trial ". . . in the interest of justice . . ." because ALI's evidence followed a theory of recovery different from that set forth in the Complaint. The panel expressed the view that such circumstances had denied the Defendants the essence of fair play and due process by inhibiting their preparation and presentation of a defense.

ALI has appealed the grant of a new trial by the lower court. CPM–Schindall has filed a cross–appeal on the denial of a judgment n. o. v.[1] Each discusses several issues, including the issue of whether or not the lower court erred in granting a new trial on the basis of a variance between the allegations in ALI's Complaint and its proof at trial. Our attention must initially be directed towards that issue.

■ It has long been held that the proof in a case must correspond with the statement of the cause of action by the plaintiff. *Long v. Lehigh Coal and Navigation Co.*, 292 Pa.

[1] No issue is raised on this appeal regarding the counterclaim asserted by CPM–Schindall in the lower court.

164, 140 A. 871 (1928). The rule against a variance between allegations and proof is based upon the sound reasoning that a defendant should not be taken by surprise at trial by being called upon to defend either against matters of which he had no notice in the pleadings, or against a different cause of action. *Pennsylvania Railroad Co. v. City of Pittsburgh*, 335 Pa. 449, 6 A.2d 907 (1939); *Borough of Schuykill Haven v. Bolton*, 190 Pa.Super. 157, 153 A.2d 504 (1959). It has been stated that one cause of action cannot be averred and another proven at the time of trial. *Glick v. Peoples–Pittsburgh Trust Co.*, 136 Pa.Super. 349, 7 A.2d 364 (1939). The wrong which may be proved must be the wrong which has been alleged, not merely another wrong in the same legal category. *Aland v. Post Gazette Publishing Co.*, 337 Pa. 259, 10 A.2d 5 (1940). Of course, a mere technical variance between the allegation and the proof, which causes no real harm to the defendant, is immaterial. See *Ellis v. Greenbaum Sons Investment Co.*, 307 Pa. 77, 160 A. 702 (1932). It has been held by this Court that even though the allegata and probata may not precisely agree, if the variance did not affect the trial on its merits, or set up different cause of action, or impose any different burden on the defendant, the variance would not be considered material. *Higgins Lumber Co. v. Marucca*, 159 Pa.Super. 405, 48 A.2d 48 (1946); *Osborne v. Victor Dairies, Inc.*, 138 Pa.Super. 117, 10 A.2d 129 (1940).

With these concepts in mind, we must examine ALI's Complaint as well as its proof at trial. The Complaint, after identifying the parties, contends that ALI entered into a contract with CPM–Schindall on September 29, 1972. Under that contract, the Defendants agreed to design and install a maintenance labor cost reduction program in ALI's plant that would result in an annual savings of $625,000 the first year of operation. The Complaint further alleged that the agreement contemplated that the program would be installed and operative by November, 1972, and that CPM–Schindall would receive $240,000 for the services to be provided. ALI alleged that it complied with all of the terms of the

agreement and cooperated with the Defendants from the date of the contract through November 9, 1973. ALI contended that during this time, its maintenance expenditures increased rather than decreased for the period between September 29, 1972 and November 9, 1973. The Plaintiff averred that on November 9, 1973, it ordered CPM–Schindall to cease operations at the plant, and demanded that the Defendants make a refund to ALI in accordance with the following provision of the agreement between the parties:

> CPM/Schindall Associates, Inc. guarantee that the savings accruing from our Cost Reduction Program, within the first year following its completion and maintenance, will equal or exceed the fees paid us, or we will refund the dollar difference.

Further, ALI alleged that the Defendants refused to comply with the refund provision of the contract. CPM–Schindall in its Answer, denied that Plaintiff had cooperated as alleged, and contended that any increase in costs to ALI was due to its own conduct.

■ It is apparent that the Plaintiff, in its Complaint, alleged that its cause of action was to enforce the guarantee provision of its contract with Defendant. However, our review of the record developed at trial reveals that the Plaintiff produced evidence for recovery against Defendants on a different legal theory. Thus, the record discloses that at the time of trial, the Plaintiff submitted evidence to show that the Defendants had put their proposed cost maintenance program into operation in November, 1972, after having previously submitted the plan to ALI. The Plaintiff further presented evidence that the program was in operation for a period of time without producing any net savings. In fact, the Plaintiff's evidence showed increasing maintenance expense combined with a deterioration in the state of repair of its equipment. Most significantly, ALI showed that *prior to the end of the first year of the contract*, in August 1973, it felt compelled to terminate Defendant's program and thus requested that Defendants leave the plant.

Plaintiff's Complaint sought the enforcement of a guarantee provision which provided for the refund of a fee if a specific dollar amount of savings was not achieved *during the first year* of the operation of the Plaintiff's plant. However, at trial, Plaintiff proceeded to present evidence for a recovery on the theory that Defendants had designed a poor plan and thus breached their contract. Plaintiff also sought jury instructions on a theory of breach of contract. The lower court found that this resulted in the Defendants being confronted, for the first time at trial, with a new theory or concept of the case. We must agree. We conclude that there was a fatal variance between the allegata and probata, and a new trial is required.

■ ALI has argued on this appeal that the Defendants waived their right to appellate review on this issue by not objecting to the evidence as it was offered by Plaintiff at trial, and by not objecting to Plaintiff's motion to amend the pleadings to conform the allegations to the proof, which motion was granted by the lower court. We find no merit in such contentions. The record shows that the Defendants argued at the time of a motion for direct verdict, during a motion for compulsory nonsuit, and during the discussion of the points for charge that there was a variance between the facts in the Complaint and the evidence produced at trial. They also contended that they had been denied a reasonable opportunity to defend the case under these circumstances. In addition, the Defendants asserted strenuously that any charge by the Court following the theory of breach of contract, rather than enforcement of the contract provision, would be in error in view of the absence of any mention in Plaintiff's Complaint of a breach or failure or performance by the Defendants. It is certainly true that a variance between the allegations and proof may be remedied by an amendment of the pleading. See *Anflick v. Gruhler*, 353 Pa. 470, 46 A.2d 161 (1946). We cannot agree however, with the contention that the Defendants in this case have not properly preserved the variance issue for appeal by failing to object to the grant of Plaintiff's request to be permitted to amend its Complaint. The record shows that the Plaintiff's

request to amend its Complaint was mentioned during a long conference between the Court and all counsel concerning the points for charge. ALI's counsel indicated that amendment would be appropriate because all of the parties had tried the case on a breach of contract theory. Defense counsel expressed disagreement with that general proposition, repeatedly both before and after the single mention by Plaintiff's counsel of a desire to amend the Complaint. The record shows no further discussion of the propriety of an amendment until the conclusion of the conference on the points for charge, when the court merely announced that it would grant Plaintiff's leave to amend. In these circumstances, we cannot find that Defendants have failed to properly preserve the issue of variance between the Complaint and the proof. In the leading case of *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974), the Supreme Court discussed the rationale for the rule that specific objections be raised in the trial court in order to preserve an issue for appellate review. It was there stated that the requirement of timely objection is designed to allow the trial judge to correct alleged trial errors, and to do so promptly if the same is required. Further, such a requirement advances the efficient use of judicial resources by guaranteeing that appellate courts will not be required to expend time or energy reviewing points on which no trial court ruling has been made. In the instant case, it is quite clear that the issue of impermissible variance between Plaintiff's Complaint and its proof at trial was raised several times by Defendants in the lower court. We find the issue to have been properly preserved for our review.

■ The Defendants have argued on this appeal that they were entitled to judgment n. o. v. on the novel theory that the Plaintiff's switch of legal theories prejudiced them in the preparation of their case. We believe that the lower court was correct in concluding that a new trial, rather than a judgment n. o. v., was the appropriate remedy in the circumstances here present.

In view of our affirmance of the order of the lower court granting a new trial on the ground that there was material

variance between the allegations in Plaintiff's Complaint and the proof at trial, we find it inappropriate to discuss several other contentions of Defendants, all of which argue that a new trial is appropriate.

■ Because of the failure by Defendants to raise any issue on this appeal as to the jury's failure to award them any damages on their counterclaim, the verdict and judgment as to that aspect of the case is final and may not be disturbed. Accordingly, the new trial shall be limited solely to the claim of the Plaintiff against the Defendants.

Affirmed and remanded for new trial solely limited to the claims of the Plaintiff against Defendants. The denial of Defendants' Motion for judgment n. o. v. is also affirmed.